UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re FORD MOTOR CO. SPEED | / | MDL DOCKET NO. 1718 |
| CONTROL DEACTIVATION SWITCH | / | HON. BERNARD A. FRIEDMAN |
| PRODUCTS LIABILITY LITIGATION | / | |
| | / | ALL CASES |
| _____ | / | |

**ORDER GRANTING DEFENDANTS' MOTION TO CLARIFY AND GRANTING
DEFENDANTS' MOTION TO DISMISS COUNTS 1-9 OF PLAINTIFFS' THIRD
AMENDED MASTER COMPLAINT**

**I.     Introduction**

Plaintiffs in this matter are comprised of people from Florida, Texas, Illinois and Louisiana who own Ford vehicles that were subject to a recall for the vehicles' defective speed control deactivation ("SCD") Switch. Plaintiffs categorize their claims into two sub-classes. First, Plaintiffs seek damages for non-incident claims, or those claims that did not involve a fire. For these claims, Plaintiffs seek economic damages for the temporary loss of their cruise control and/or vehicles during recall service. Such claims and/or plaintiffs are referred to as "Loss of Use" claims or plaintiffs. As to the second sub-class, Plaintiffs assert claims for those of the class who experienced real or personal property damage as a result of a fire allegedly caused by a defective SCD Switch. Such claims and/or plaintiffs are referred to as "Incident" claims or plaintiffs. This motion does not address the Incident claims or plaintiffs.

The portions of Plaintiffs' class action lawsuit relevant to this motion allege that millions of Ford Motor Company ("Ford") automobile owners were required to disconnect their SCD Switch in order to avoid a fire hazard, which resulted in being left without operative cruise controls for a period of months. Plaintiffs seek damages for the period during which they could

not use their cruise controls on their Ford automobiles.

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendants Ford, Tipton Motors, Inc., Southway Ford, Inc., Bill Curry Ford, Inc., Karl Flammer Ford, Inc., and Sawgrass Ford, Inc. (collectively, "Defendants"), have filed a motion to dismiss certain claims and causes of action alleged by Plaintiffs.

## II. Procedural History

Plaintiffs filed the initial Master Complaint in this case on July 28, 2006. On September 7, 2006, Plaintiffs, with the agreement of the parties, filed a Second Amended Master Complaint. On November 22, 2006, Defendants filed the current Motion to Dismiss. A response and reply to the Motion to Dismiss were timely filed. Plaintiffs then filed a Motion for Leave to File Third Amended Master Complaint ("TAMC") and a surreply, which the Court granted. All analysis and rulings in this Order are with regard to Plaintiffs' TAMC.

On March 23, 2007, the Court issued an Order for Additional Briefing, asking the parties to submit supplemental briefs on two issues of jurisdiction: 1) unresolved motions to remand in the underlying cases; and 2) the issue of whether class certification is to be determined prior to the Court rendering a decision on Defendants' Motion to Dismiss. The parties submitted their briefs, in which they agreed with each other that the Court properly has subject matter jurisdiction over the actions consolidated into these multidistrict litigation ("MDL") proceedings.

The Court also finds that its jurisdiction over this matter is proper, and that it may rule on Defendants' Motion to Dismiss. The Court bases its finding on the fact that the Judicial Panel on Multi-District Litigation ("JPMDL") is continually transferring newly-filed cases regarding the subject of this litigation into this MDL. Some of the cases that have been transferred were

originally filed in state court, and removed to federal court prior to being consolidated with this MDL.  Some of the cases that were originally filed in state court came to this MDL with unresolved motions to remand. The Court expects that additional cases will continue to be transferred into this MDL in the future, some of which may also have unresolved motions to remand.  Considering the possibility that more cases will be transferred to this MDL, some of which may contain such unresolved motions, the Court finds that it would be impracticable for it to delay making rulings in this MDL because of the actual or potential future presence of such motions.  Should later proceedings determine that the Court does not have proper subject matter jurisdiction over such matters, then the Court's rulings would not be binding on such cases if they are eventually remanded to state court.

As to its second query, the Court concludes that it does not need to rule on class certification prior to ruling on Defendants' motion to dismiss.  The Court's jurisdiction over the nationwide class actions that have been transferred to this MDL is pursuant to the Class Action Fairness Act ("CAFA"),  28 U.S.C. § 1332(d).  Under CAFA, the Court's diversity jurisdiction "shall apply to any class action before or after the entry of class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8).  Accordingly, the Court's jurisdiction over this matter is proper, regardless of whether a class has been certified.

In addition, Defendants filed a Motion Clarifying Relief Sought in Defendants Partial Motion to Dismiss Second Amended Master Complaint.  In their motion, Defendants seek to "clarify the scope of the relief sought in their pending Partial Motion to Dismiss . . . as applying to *all* Named Plaintiffs as of the date of the Court's order on the Motion – whether named in the [Master Complaint] or in individual cases transferred subsequent to the filing of the [Master

Complaint] – from Florida, Illinois, Louisiana, and Texas. The Court has reviewed this motion, and finds that in the interest of preserving judicial resources and minimizing the briefing burden on the parties, Defendants' motion is granted. The law argued within Defendants' Motion to Dismiss, as it pertains to Plaintiffs from Florida, Illinois, Louisiana and Texas, has not changed between the filing of the motion and/or Plaintiffs' TAMC and the date of this order. Accordingly, the rulings contained within this order will apply to all cases that have been transferred to this MDL, regardless of the date of transfer.

## III. Facts

The parties essentially agree on the factual background of this case. Plaintiffs in this matter are residents of Texas, Florida, Illinois and Louisiana, and do not allege any sales or service transactions occurring in any other states.

### A. Factual History

Defendant Ford manufactures and distributes vehicles, which it sells to independent and authorized dealers. The dealers then sell the vehicles to consumers, and subsequent used-vehicle sales are made between dealers and consumers or among consumers themselves. While not a party to sales or lease transactions involving consumers, Ford extends a limited express warranty ("Limited Warranty") to the purchasers of its vehicles. Among the Defendants are five independent Ford dealers ("the Dealer Defendants") from whom some of the Plaintiffs purchased their vehicles.

Plaintiffs allege that the Ford vehicles that they purchased contain defects regarding the SCD Switches and related circuitry. Plaintiffs allege that the SCD Switches pose a fire risk to the vehicles and to surrounding property. Plaintiffs allege that Ford had knowledge of the

4

problems with the SCD Switches, but still used the same or similar design in the Ford vehicles that are the subject of this lawsuit. They further allege that the defect has caused at least sixty-five fires.

Plaintiffs allege four occasions since 1999 when Ford voluntarily recalled certain Ford vehicles to repair or replace the SCD Switch or related circuitry. Those recalls were dated May 13, 1999, January 27, 2005, September 7, 2005 and August 3, 2006. It is undisputed by the parties that Ford has voluntarily recalled approximately 6.3 million of the vehicles at issue in this litigation to repair or replace parts related to the SCD Switch. Plaintiffs allege that the owners of more than 740,000 vehicles, who had their vehicles repaired subject to the January 2005 recall, were unable to have the defect corrected for at least three months. In addition, Plaintiffs allege that the owners of the almost 4.3 million vehicles subject to the third recall were unable to have the defect corrected for at least five months.

Ford points out that its new vehicle limited warranted ("the Limited Warranty") provides a "repair, replace, or adjust" remedy, and excludes all damages. The Limited Warranty is provided by Ford with the purchase or lease of each new Ford, Lincoln, or Mercury brand vehicle. The Limited Warranty states that it "is the only express warranty applicable to" a vehicle. The Limited Warranty limits its period of "bumper to bumper" warranty coverage to three years, or 36,000 miles, whichever occurs first. The Limited Warranty does not warrant that the vehicle will be free from defects, but rather provides a limited "repair, replace or adjust" remedy. In addition, it excludes all incidental and consequential damages, stating that it is "not responsible for any time that you lose, for any convenience you might be caused, for the loss of your transportation, or for any other incidental or consequential damages you may have."

### B. Claims

Plaintiffs assert ten claims in their TAMC: 1) breach of contract against Ford; 2) breach of the implied warranty of merchantability against Ford in states that have enacted the Uniform Commercial Code; 3) breach of express warranty against Ford; 4) strict liability for unreasonably dangerous vehicles; 5) negligence; 6) fraud and willful omission against Ford; 7) negligent omission against Ford; 8) state consumer-fraud act claims against Ford; 9) Louisiana redhibition statutory claim against Ford; and 10) unjust enrichment.

The Loss of Use Plaintiffs seek monetary damages for the alleged excessive price paid for their Ford vehicles due to the alleged SCD Switch defect, the loss of use of their Ford vehicles during the recall service, the inconvenience suffered in having the repairs made, and the time period the cruise control was inoperative as a result of the repairs.

## IV. Legal Standard

Defendants have filed a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted is procedural, and tests the sufficiency of the allegations in the complaint. Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006). Under Rule 12(b)(6), a court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." Benzon v. Morgan Stanley Distribs., Inc., 420 F.3d 598, 605 (6th Cir. 2005).

## V. Analysis

### A. Actual Loss

As an initial matter, Defendants argue that the named Loss of Use Plaintiffs did not suffer any actual loss or manifest injury, and thus cannot state a claim upon which relief can be granted. Defendants argue that the Loss of Use Plaintiffs do not allege that they ever actually experienced an SCD Switch malfunction. Accordingly, Defendants argue, Plaintiffs' claims are purely speculative, since without experiencing any manifested defect with their SCD Switches, Plaintiffs have not suffered a compensable injury. Defendants point out that the possibility of future harm is not a compensable injury.

In response, Plaintiffs assert that the damages they seek are not for the potential malfunction of the SCD Switch or some other potential injury, but rather for the time during which they were without their cruise control between when they had their SCD Switch disconnected and when they had new a new SCD Switch installed. Plaintiffs point out that they are not seeking damages for the possibility of future harm, but rather for the harm they allegedly suffered during this interim period.

The fact that Plaintiffs were without the use of their SCD Switch for a period of time is undisputed. This deprivation of use forms the basis of the Loss of Use Plaintiffs' claims. Such loss of use is a recognizable claim. Mich. Mut. Ins. Co. v. CNA Ins. Cos., 448 N.W.2d 854, 857 (Mich. App. 1989). Accordingly, Defendants' motion to dismiss will not be granted on these grounds.

B.     Motor Vehicle Safety Act

Defendants next argue that Plaintiffs' state-law claims seeking loss of use and inconvenience damages associated with the recall service conflict with, and are preempted by, the Motor Vehicle Safety Act ("MVSA"), 490 U.S.C. § 30101, *et seq.*

Federal preemption of state law can occur in three situations: (1) where Congress explicitly preempts state law; (2) where preemption is implied because Congress has occupied the entire field; and (3) where preemption is implied because there is an actual conflict between federal and state law. Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300 (1988). Defendants argue that the third situation is applicable to this matter. They argue that it is impossible for them to comply with both federal and state law, and that under the circumstances of this case, the state laws stand as an obstacle to the objectives of Congress in enacting the MVSA.

Conflict preemption, however, occurs only when a state law claim actually conflicts with federal law, rendering compliance with both federal law and state law impossible, or when the state law "stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress." California v. ARC Am. Corp., 490 U.S. 93 (1989).

Defendants have failed to demonstrate that the state laws under which Plaintiffs bring their claims pose an obstacle to the execution of Congress' objectives in enacting the MVSA.

The MVSA was enacted with the purpose of "reduce[ing] traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. In order to accomplish its safety objectives, the MVSA imposes two primary obligations upon the Department of Transportation and vehicle manufacturers: (1) the MVSA delegates authority to the Secretary of Transportation

8

to "prescribe motor vehicle safety standards" and investigate and order remediation of vehicle defects; and (2) the MVSA imposes upon vehicle manufacturers obligations to notify NHTSA and consumers of the discovery of safety-related vehicle defects, and to remedy those defects. The MVSA extensively regulates vehicle recalls, and imposes upon manufacturers the obligation to timely remedy or repair safety defects.

Defendants, after consulting with NHTSA, initiated a voluntary and extensive recall campaign, ultimately recalling approximately 6.3 million vehicles equipped with the subject SCD Switches. Defendants state that the recall was subject to NHTSA's oversight and supervision. Defendants claim that the recall was performed promptly, and done in accordance with its extensive MVSA obligations. Ford claims that it has behaved in full compliance with the MVSA regarding its recall, and that the NHTSA has monitored all aspects of its recall.

While the Court applauds Defendants for maintaining full compliance with the MVSA, Defendants fail to demonstrate how Plaintiffs' state law claims interfere with its recall obligations under the MVSA. Defendants attempt to argue that "Plaintiffs' state law claims seeking to hold Ford liable for honoring its recall responsibilities pose clear and irreconcilable conflicts with the [MVSA]." Dfts. Brief at 19. Defendants claim that if Plaintiffs are successful on their claims, then Defendants will be faced with an actual and irreconcilable dilemma: whether to 1) wait to initiate a recall until after it acquires sufficient quantities of replacement parts to immediately complete the recall so as to minimize any loss of use or inconvenience, which could subject it to penalties under the MVSA; or 2) to initiate the recall immediately, potentially subjecting it to state law liability for its failure to have replacement parts immediately on hand.

Plaintiffs, in response, argue that none of the Loss of Use claims can be construed as encroaching on NHTSA's work. They argue that their claims do not affect NHTSA's ability to conduct or supervise recalls. The recalls were still able to take place, even with the possibility that Defendants might face future state law liability.

The MVSA provides for "remedies for defects and non-compliance." 49 U.S.C. § 30120. Congress made clear that the MVSA remedies provisions were not exclusive, but rather that they were "in addition to other rights and remedies under other laws of the United States or a State." 49 U.S.C. § 30103(d). Accordingly, "it is clear that Congress intended to leave open to consumers State remedies in addition to [the other remedies provided under the Act.]" Chamberlain v. Ford Motor Co., 314 F.Supp. 2d 953, 960 (N.D.Cal. 2004).

Here, the fact that Defendants may have to pay damages for its failure to have sufficient replacement parts on hand does not interfere with the enforcement of the MVSA. Whether Defendants may have to pay such damages does not pose an actual and irreconcilable dilemma, and does not interfere with the NHTSA oversight of the recalls. The state laws at issue do not preclude Defendants from complying with their MVSA obligations; rather, they impose obligations on Defendants *in addition to* those found within the MVSA. Defendants' motion to dismiss will not be granted on these grounds.

C.      **Limited Warranty Notice and Claim Period Prerequisites**

The Plaintiffs from Florida, Texas and Illinois each allege that they purchased their Ford vehicles in their respective states. Pursuant to UCC 1-105, the warranty claims asserted by the Florida, Texas and Illinois Plaintiffs are governed by those states' UCC statutes.

Plaintiffs' breach of express and implied warranty claims are subject to two prerequisites:

10

(1) Plaintiffs must give individual notice to Ford or its dealers of the alleged defect under UCC 2-607; and (2) Plaintiffs must seek warranty service within the three-year period set forth in the Limited Warranty. Dfts. Exh. F.

Plaintiffs take the position that the Court should disregard Defendants' evidence of the Limited Warranty, as this is a 12(b)(6) motion, and the Court is to look only to Plaintiffs' complaint. Plaintiffs' arguments are misplaced. Federal Rule of Civil Procedure 12(b) states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The Court will treat Defendants' motion, as it regards the Florida, Illinois and Texas Plaintiffs' breach of warranty claims, as one for summary judgment pursuant to the Federal Rules of Civil Procedure. Plaintiffs had ample opportunity to present pertinent material regarding these claims, and could have done so, had they chose to. In fact, the Court has permitted Plaintiffs to file both the TAMC and a surreply to Defendants' motion. Plaintiffs could have filed additional documentation or made arguments regarding the terms of the Limited Warranty at that time.

Here, Plaintiffs' claims do not satisfy either prerequisite for making a breach of warranty claim. Plaintiffs failed to provide individual notice to Defendants of the alleged defect, and Plaintiffs failed to seek warranty service within the three-year period set forth in the Limited Warranty. In fact, the Loss of Use Plaintiffs did not experience any problems with their SCD Switch at any time during the three year period covered by the Limited Warranty, and only after the three-year period did they experience the loss of use for which they now seek compensation.

UCC 2-607 requires, as a predicate to any UCC breach of express or implied warranty claim, that a plaintiff provide a manufacturer with individual notice of an alleged breach prior to filing an action. 810 ILCS 5/2-607; Tex. Bus. & Com. Code § 2.607; Fla. Stat. Ann. § 672.607. It is the buyer's burden to allege and prove sufficient notice. Id. Here, Plaintiffs did not provide any notice, but rather allege that individual notice was unnecessary, because Defendants had knowledge of the nature of the alleged defect. Recall notices do not satisfy the notice requirement. Perona v. Volkswagen of Am., 684 N.E.2d 859, 863 (Ill. App. Ct. 1997). Satisfaction of UCC 2-607 is a condition precedent to any breach of warranty claim under the UCC. "Even if a manufacturer is aware of problems with a particular product line, the notice requirement of § 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584 (Ill, 1996).

Here, Plaintiffs concede that they did not provide UCC 2-607 notice. Accordingly, their UCC warranty claims fail.

However, even if Plaintiffs had provided UCC 2-607 notice, their breach of warranty claims would fail because they did not seek warranty service within the three-year warranty period contained within the Limited Warranty. Dfts. Exh. F. Ford's Limited Warranty requires that vehicle owners bring their vehicle to a Ford dealer for warranty service within three years or 36,000 miles, whichever comes first. Dfts. Exh. F. The warranty period explicitly applies to warranty claims made pursuant to both (1) the Limited Warranty and (2) any implied warranties. Id.

None of the named Plaintiffs allege that they sought service for their SCD Switch, or had

12

problems with their SCD Switch, within the three-year warranty period. In fact, some Plaintiffs only now assert warranty claims on vehicles as old as 1995-1999 model years. As one appellate court has explained,

> To allow a customer to seek damages for breach of an express warranty beyond the limits specified in that warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer for which it did not contract.

Evitts v. DaimlerChrysler Motors Corp., 834 N.E.2d 942, 950 (Ill.App.Ct. 2005).

The Court finds that the Limited Warranty expired before any Plaintiff first asserted any warranty claim. Accordingly, the Florida, Texas and Illinois Plaintiffs, whose claims are governed by the UCC, have failed to state a claim for breach of express or implied warranty, and their breach of warranty claims are dismissed.

**D.     Breach of Contract**

Plaintiffs, in Count I of the TAMC, allege that ownership of the Ford vehicles was transferred from Ford to the initial purchasers by virtue of a certificate of origin. Plaintiffs allege that the certificate of origin constitutes a contract between them and Ford, which they claim that Ford has breached.

Defendants argue, in response, that the certificate of origin does not constitute a contract. By way of example, Defendants attach a sample certificate of origin to their response. Dfts. Exh. N. The certificate of origin clearly demonstrates the transfer of the vehicle from Ford to a dealer. The certificate does not contain any contractual terms, and does not even refer to any consumer. It simply evidences the chain of the vehicle's title from Ford to the dealer. This document, which fails to even reference the consumer, let alone any contractual terms between the consumer and Ford, can not possibly constitute a contract between Plaintiffs and Ford.

13

In reply, rather than address Defendants' sample certificate of origin, Plaintiffs take the position that the Court should disregard any evidence presented by Defendants, as this is a Rule 12(b)(6) motion, and the Court is to look only to Plaintiffs' complaint. As explained above, Plaintiffs' arguments are misplaced.

The Court will treat Defendants' motion, as it regards Count I of Plaintiffs' Complaint, as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs had ample opportunity to present pertinent material regarding Count I, and could have done so, had they chosen to. In fact, the Court has permitted Plaintiffs to file both the TAMC and a surreply to Defendants' motion. Plaintiffs could have filed additional documentation with either of those filings.

Plaintiffs have failed to demonstrate the existence of a contract with Ford. The document that they attempt to claim as a contract does not contain all of the requisite terms required to form a contract, including Plaintiff's name, consideration, or the terms of the contract. Accordingly, Count I of Plaintiffs' complaint fails.

### E.  Louisiana Common Law Claims

Defendants next argue that the Louisiana Plaintiffs fail to state a cause of action for any common law claims, including their common law contract, warranty and tort claims. Defendants state that Plaintiffs are precluded from filing their claims outside of the statutory framework provided by the Louisiana legislature.

The Louisiana Products Liability Act ("LPLA") "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52. "A claimant may not recover from a manufacturer for damage caused by a product on the basis of

14

any theory of liability that is not set forth in [the LPLA].'" Id. Louisiana courts have held that the LPLA is the sole basis for recovery on tort claims asserted by purchasers of vehicles who alleged that systems within the vehicles were defective. In re Air Bag Products Liability Litigation, 7 F.Supp.2d 792 (E.D.La. 1998). In so holding, the Eastern District of Louisiana has stated that "any negligence and strict liability claims are preempted by the LPLA. The LPLA provides the sole statutory model for Plaintiffs' tort claims." Id. at 802. The court, noting that the plaintiffs in that matter had failed to plead their tort claims pursuant to the LPLA, dismissed all such claims. *See also* Jenkins v. International Paper Co., 945 So.2d 144 (La.App. 2006); Lavergne v. America's Pizza Co., LLC, 838 So.2d 845 (La.App. 2003); Ashley v. General Motors Corp., 666 So.2d 1320 (La.App. 1996).

The Louisiana Plaintiffs have not brought their common law contract, warranty and tort claims pursuant to the LPLA. Accordingly, Counts 4, 5 and 7, and Count 6 as it pertains to the Louisiana Plaintiffs, are dismissed.

### F. Fraudulent and Willful Omission Claim: Florida, Texas and Illinois

To state a claim for common law fraudulent omission, a plaintiff must allege that a defendant omitted a material fact when it was under a duty to disclose that fact. Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 593 (Ill. 1996).

A duty to disclose may arise where (1) the parties are in a fiduciary or confidential relationship; or (2) where the plaintiff places trust and confidence in the defendant, thereby placing defendant in a position of influence or superiority over plaintiff. Id. Plaintiffs have not alleged either basis, instead simply stating their own legal conclusion that a duty exists from Defendants to Plaintiffs. The Court will not consider Plaintiffs' legal conclusion of duty to be

15

true without any factual allegations to support such a conclusion. Morrison v. Marsh & McClennan Companies, Inc., 439 F.3d 295, 300 (6th Cir. 2006)("[A] court is not required to accept as true unwarranted legal conclusions and/or factual allegations.").

Accordingly, without any factual allegations supporting the existence of a duty owed from Ford to the Plaintiffs, Count 6 of Plaintiffs' complaint must be dismissed.

### G. State Consumer Fraud Act Violation Claims

Defendants, in their motion to dismiss, argue that Plaintiffs do not satisfy Federal Rule of Civil Procedure 9(b)'s heightened-pleading standard for their consumer-fraud claims. State consumer-fraud act claims asserted in federal court must satisfy Rule 9(b). Williams v. Scottstrade, Inc., 2006 WL 2077588 at *7 (E.D.Mich. July 24, 2006). "[I]n any complaint averring fraud or mistake, 'the circumstances constituting fraud or mistake shall be stated with particularity.'" Southeast Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 672 (6th Cir. 2006)(citing Fed. R. Civ. P. 9(b)). "Rule 9(b) requires a plaintiff alleging fraud to set forth the time, place, and content of the particular representations on which he or she allegedly relied." Williams v. Scottstrade, Inc., 2006 WL 2077588 at *7. "Rule 9(b) exists to provide notice sufficient for the defendant to prepare a responsive pleading to fraud allegations." Durant v. Servicemaster Co., et al, 159 F.Supp.2d 977, 982 (E.D.Mich. 2001). "Toward that end, a plaintiff must allege the: time, place, and content of the alleged misrepresentation . . ." Id.

In Paragraph 116 of the TAMC, Plaintiffs allege that "Ford advertised Ford Vehicles as being safe and that Ford is a family that cherishes the safety of its customers and that Ford is 'committed to putting the safest vehicles on the road.'" Plaintiffs fail to identify the representation(s) made by Ford on which they allegedly relied with any specificity. They do not

16

allege where or when Ford made the alleged misrepresentations. As explained in *Williams*, "without knowing more specifically the statements on which [Plaintiffs] allegedly relied, [Ford] and this Court cannot evaluate whether they are actionable representations or whether they constitute mere puffery." Williams at *7.

Plaintiffs have had ample opportunity to modify their pleadings. Defendants' motion to dismiss was filed before Plaintiffs filed the TAMC. By the time Plaintiffs filed the TAMC, they had filed a response, and Defendants had filed a reply to the motion to dismiss. Plaintiffs were aware of Defendants' argument that their state consumer fraud act violation claims were defective, and Plaintiffs even sought leave to amend their complaint to rectify such defects, which the Court granted.

Plaintiffs' pleadings fail to meet the requirements of Rule 9(b). Accordingly, Count 8 of the TAMC is dismissed.

### H.    Louisiana Redhibition Claim

Defendants argue in their motion that Plaintiffs cannot state a claim for redhibition, because they do not allege a manifest defect, which is a necessary element for proving a redhibitory defect. Defendants argue that because Plaintiffs did not actually experience any problems with their SCD Switch, they do not have grounds upon which to bring a redhibition claim. Plaintiffs' claim can not be dismissed on these grounds. The existence of a defect, even if the defect has not presented itself to a plaintiff, is sufficient for a finding that it is a redhibitory defect. In re: Ford Motor Co. Bronco II Prods. Liab. Litig., 1995 WL 491155, *7.

However, the Court finds that Plaintiffs' redhibition claim should be dismissed because successful repairs were made on Plaintiffs' vehicles.

17

The Louisiana redhibition statute states the following:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

La. Civ. Code Art. 2520.

To prevail in redhibition, a plaintiff must prove, in addition to the statutory requirements above, that the defect existed at the time of sale, and that he afforded the seller an opportunity to repair the defect. Johns v. American Isuzu Motors, Inc., 622 So.2d 1208, 1210 (La. App. 1993). Implicit in the requirement that an opportunity to repair be afforded to the seller is the requirement that such repair was unsuccessful.

Here, Plaintiffs do not allege that Defendants' repair of the SCD Switch was unsuccessful. In fact, they acknowledge that repairs were made. Accordingly, their redhibition claim must be dismissed.

**VI. Order**

Accordingly,

IT IS ORDERED that Defendants' Motion to Clarify Relief is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 1-9 of Plaintiffs' Third Amended Master Complaint is GRANTED.


Dated: August 24, 2007          ____s/Bernard A. Friedman_____
       Detroit, Michigan        BERNARD A. FRIEDMAN
                                CHIEF UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman